UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| HILARIO GARCIA AVENDANO, | Case No. 4:12CV3045 |
| Plaintiff, | JUDGE BENITA Y. PEARSON |
| v. | Magistrate Judge George J. Limbert |
| BOP DIRECTOR, et al., | **Report and Recommendation** |
| Defendants. | |

This matter is before the Court upon the Motion to Dismiss filed on behalf of Defendants, Mr. Pugh, Warden, [Community Corrections Association ("CCA")], Ms. D. Hivner (Health Services Administrator), Dr. Rupeka (Doctor at [Northeast Ohio Corrections Center ("NEOCC")], and Mr. Hall (P.A. at NEOCC)(collectively "CCA defendants") on March 15, 2013, ECF Dkt. #8, and the Motion for Summary Judgment as to Exhaustion of Administrative Remedies filed on behalf of the CCA defendants on the same day. ECF Dkt. #9. As of the date of this report and recommendation, no response brief has been filed.

Plaintiff, who is acting *pro se*, is a federal Bureau of Prisons inmate incarcerated at NEOCC, which is owned and operated by CCA. The CCA defendants are employees of CCA. In his complaint, Plaintiff alleges that the CCA defendants and Defendant, BOP Director[1] acted with deliberate indifference to his serious medical needs in violation of his Eighth Amendment right to be free of cruel and unusual punishment. Plaintiff brings his constitutional claim pursuant to *Bivens*

---
[1]Plaintiff perfected service on BOP Director on March 25, 2013. ECF Dkt. #12.

*v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).[2]

In the motion to dismiss, the CCA defendants contend that the United States Supreme Court's decision in *Minneci v. Pollard*, __ U.S. __,132 S.Ct. 617(2012), bars Plaintiff's Eighth Amendment claim against them because they are employees of a private prison. In *Minneci*, the Supreme Court declined to "imply the existence of an Eighth Amendment-based damages action (a *Bivens* action) against employees of a privately operated federal prison." *Id.* at 620. In the alternative, the CCA defendants argue that Plaintiff has failed to state a claim upon which relief can be granted, because he alleges in his complaint that he did receive some medical care. Finally, in their motion for summary judgment, the CCA defendants contend that this matter must be dismissed with prejudice because Plaintiff has failed to exhaust his administrative remedies.

I.  FACTS

In his complaint, Plaintiff asserts that he has a "Left Eye problem," which, according to an "outside consult[ation]" conducted on June 6, 2012, requires surgery. ECF Dkt. #1 at p. 3. The surgery is urgently needed because "his condition is so serious that he is loosing [sic] his sight on his right eye," and "defendant [sic] has a strong pain in his right eye, due to his current condition with his left eye." *Id.* at p. 4. On August 8, 2012, "defendant [sic] got an answer from his Informal Resolution which was answered by DStan LNP [sic], where she stated that 'If the condition persists a new request for a surgery will be submitted. . .' " *Id.*

Plaintiff attached several internal prison documents to his complaint, including an informal resolution form (dated August 1, 2012), ECF Dkt. #1-3, an inmate/resident grievance form (dated August 15, 2012) and response, ECF Dkt. #1-2, an inmate request to staff member (dated August 28, 2012), ECF Dkt. #1-3 at p. 3, and two administrative remedy appeal forms (dated September 10, 2012 and October 1, 2012), ECF Dkt. #1-1.

---

[2]In *Bivens*, the Supreme Court recognized for the first time an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights.

According to the inmate/resident grievance form, which was completed by D. Starr, LPN ("Nurse Starr") on August 8, 2012, Plaintiff was seen by Dr. Gabriel on April 24, 2012, then was referred to Dr. Wang (the outside consultant) by Dr. Gabriel and seen by Dr. Wang on June 6, 2012. Dr. Wang recommended cataract surgery however the recommended procedure was denied by Dr. Cherry, the utilization review physician, on July 27, 2012. ECF Dkt. #1-3 at p. 2. Plaintiff's next appointment with Dr. Gabriel was scheduled for August 14, 2012. The form indicates that Plaintiff's vision in his right eye was 20/20 and would compensate for the loss of vision in his left eye.

Plaintiff seeks injunctive relief, that is, an order from this Court "to compel [sic] to [sic] defendants to give plaintiff the surgery that was recommended by his current condition as soon as possible because of his constant pain and physical and mental anguish. . ." *Id.* at p. 10. He further seeks "any additional relief this Court deems just and equitable." *Id.* at p. 10.

## II.    STANDARD OF REVIEW

"Dismissal is appropriate when a plaintiff fails to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). The Court must assume that the factual allegations in the complaint are true and construe the complaint in the light most favorable to the plaintiff." *Comtide Holdings, LLC v. Booth Creek Management Corp.*, 335 Fed.Appx. 587, 588 (6th Cir.2009) (citing *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir.2008)). However, in construing the complaint in the light most favorable to the non-moving party, "the court does not accept the bare assertion of legal conclusions as enough, nor does it accept as true unwarranted factual inferences." *Gritton v. Disponett*, 332 Fed.Appx. 232, 236-37 (6th Cir.2009) (citing *In re Sofamor Danek Group, Inc.*, 123 F.3d 394, 400 (6th Cir.1997)).

"To survive a Rule 12(b)(6) motion, the nonmoving party must provide more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do .... Factual allegations must be enough to raise a right to relief above the speculative level." *ABS Industries, Inc. ex rel. ABS Litigation Trust v. Fifth Third Bank*, 333 Fed.Appx. 994, 997 (6th Cir.2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir.2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007))).

Summary judgment, in the alternative, should be granted "if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed.R.Civ.P. 56(c).

This Court must view evidence in the light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *CenTra, Inc. v. Estrin*, 538 F.3d 402, 412 (6th Cir.2008). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 702 (6th Cir.2008). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most civil cases, the Court will decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505.

Upon filing a motion for summary judgment, the moving party has the initial burden of establishing that there are no genuine issues of material fact as to an essential element of the nonmoving party's claim. *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir.2009) (citation omitted); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 & n. 12 (6th Cir.1989). The moving party, however, is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the moving party relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In response, if the moving party establishes the absence of a genuine issue of material fact, to defeat summary judgment, the non-moving party "may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial." Fed.R.Civ.P. 56(e)(2); see also *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir.2009) (citation omitted).

In this regard, "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment"; rather, "Rule 56 allocates that duty to the opponent of the motion, who is required to point out the evidence, albeit evidence that is already in the record, that creates an issue of fact." *Williamson v. Aetna Life Ins. Co.*, 481 F.3d 369, 379–80 (6th Cir.2007) (citation omitted); see also *Tucker v. Tennessee*, 539 F.3d 526, 531 (6th Cir.2008)(citation omitted). Moreover, the non-moving party must show more than a scintilla of evidence to overcome summary judgment; it is not enough for the non-moving party to show that there is some metaphysical doubt as to material facts. *Matsushita Elec. Indus. Co.*, 475 U.S. at 586-87, 106 S.Ct. 1348; see also *Barr v. Lafon*, 538 F.3d 554, 574 (6th Cir.2008).

Accordingly, the ultimate inquiry is whether the record, as a whole, and upon viewing it in the light most favorable to the non-moving party, could lead a rational trier of fact to find in favor of the non-moving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 586-87, 106 S.Ct. 1348; see also Anderson, 477 U.S. at 252, 106 S.Ct. 2505 ("The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict—whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." (emphasis in original) (internal quotations omitted)).

III.    ANALYSIS

A.    Plaintiff's claim for money damages

The *Bivens* Court provides a limited cause of action against individual federal government officers acting under color of federal law alleged to have acted unconstitutionally. *Correctional Services Corporation v. Malesko*, 534 U.S. 61, 70, 122 S.Ct. 515, 151 L.Ed.2d 456 (2001). *Under*

*Bivens*, a plaintiff must plead and prove two essential elements. First, he must show that he has been deprived of rights secured by the Constitution or the laws of the United States. Second, he must demonstrate that defendants acted under color of federal law. *Bivens*, 403 U.S. at 397. *Bivens'* purpose is to deter individual federal officers, not the federal agency itself, from committing constitutional violations. *Malesko* at 70. A *Bivens* action therefore cannot be brought against an entity such as the federal prison, the Bureau of Prisons, or the United States Government. *Id.*

The United States Supreme Court recently declined to extend *Bivens* to the employees of a private prison under certain circumstances. See *Minneci*, *supra*. The *Minneci* Court wrote: "A federal prisoner seeking damages from privately employed personnel working at a privately operated federal prison, where the conduct allegedly amounts to a violation of the Eighth Amendment, and where that conduct is of a kind that typically falls within the scope of traditional state tort law (such as the conduct involving improper medical care at issue here), must seek a remedy under state tort law. A *Bivens* remedy cannot be implied." *Id.* at 626.

In this case, Plaintiff's Eighth Amendment claim "focuses upon a kind of conduct that typically falls within the scope of traditional state tort law." *Minneci* at 623. Accordingly, to the extent that Plaintiff's prayer for "any additional relief this Court deems just and equitable," can be interpreted to as an effort to recover damages, the undersigned recommends that the Court find that Plaintiff cannot bring a *Bivens* claim against the CCA defendants.

However, the Supreme Court's decision of *Minneci* does not preclude Plaintiff's suit for injunctive relief. See *Hernandez v. Dixon*, 2012 WL 6839329 (N.D. Texas). Therefore, the undersigned recommends that the Court consider the CCA defendants' alternate argument, that is, that the complaint fails to state a claim upon which relief may be granted.

B.   Plaintiff's claim for injunctive relief

The Eighth Amendment secures protection against deliberate indifference to the serious medical needs of convicted persons. *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). "The test to determine whether [a defendant] acted with 'deliberate indifference' has an objective and subjective component." *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir.2001). To succeed on a claim of deliberate indifference, the plaintiff must offer

evidence on both components: the objective serious medical need, and the defendant's subjective deliberate indifference to it. *Farmer*, 511 U.S. at 834. In this case, the allegations in the complaint, if taken as true, establish that plaintiff has a serious medical need; the question is whether the complaint alleges the subjective component of his deliberate indifference claim.

"To satisfy the subjective component, the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir.2001)(citing *Farmer*, 511 U.S. at 837). Deliberate indifference is the "equivalent of recklessly disregarding [a substantial risk of serious harm to a prisoner]." *Dominguez v. Corr. Med. Serv.*, 555 F.3d 543, 550 (6th Cir.2009) (quoting *Phillips v. Roane Cnty.*, 534 F.3d 531, 540 (6th Cir.2008)).

The Sixth Circuit has further held that "less flagrant conduct may also constitute deliberate indifference in medical mistreatment cases." *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 843 (6th Cir.2002). "[G]rossly inadequate medical care" qualifies. That occurs when medical treatment is " 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness .' " *Id.* at 844 (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir.1989)).

A prisoner who is allowed to suffer pain needlessly when relief is readily available does have a cause of action against those whose deliberate indifference is the cause of his suffering. *Westlake v. Lucas*, 537 F.2d 857, 860 (6th Cir.1976). However, there is a distinction between a complete denial of medical care and allegations of inadequate medical treatment. *Id.* at 860, n. 5. Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts generally are reluctant to second guess medical judgments and to constitutionalize claims that sound in state tort law. *Id.* Of course, in some cases the medical attention rendered may be so woefully inadequate as to amount to no treatment at all. *Id.* But differences in judgment between an inmate and prison medical personnel regarding appropriate medical diagnoses or treatment are insufficient to state a deliberate indifference claim. *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir.1995). "Deliberate indifference is not mere negligence," *Watkins v. City of Battle*

*Creek*, 273 F.3d 682, 686 (6th Cir.2001), and mere allegations of malpractice are insufficient to state a claim, *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1986).

Here, Plaintiff alleges that a private physician recommended surgery and that a request for surgery will be resubmitted in the event that Plaintiff's condition worsens. As a consequence, medical care has been provided to Plaintiff. However, this case does not present a typical Eighth Amendment fact pattern, where the prisoner relies upon his own assessment of his medical condition to assert an unconstitutional denial of medical treatment. Here, Plaintiff relies upon the opinion of the outside consultant, who concluded that Plaintiff required surgery. Although the Tenth Circuit has held that "where a plaintiff's private physician recommends a course of treatment for the plaintiff's condition, a prison doctor's use of a different treatment regimen does not amount to deliberate indifference, see *McCracken v. Jones*, 562 F.2d 22, 24 (10th Cir,1977), however, in he case *sub judice,* Plaintiff appears to have received no treatment. To the extent that the facts in this case are readily distinguishable from the cases where the federal courts have typically dismissed a prisoner's Eighth Amendment claim, the undersigned recommends that the Court deny the motion to dismiss predicated upon Plaintiff's failure to state a claim for relief.

  C.  <u>Plaintiff's failure to exhaust his administrative remedies</u>

Turning to the CCA's motion for summary judgment, under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e(a), "[p]risoners must exhaust their administrative remedies before challenging prison conditions." *Grinter v. Knight*, 532 F.3d 567, 577 (6th Cir.2008). The United States Supreme Court has held that the PLRA's exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 517 (2002). Furthermore, as the Supreme Court explained in *Jones v. Bock*, 549 U.S. 199, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007), "prisoners must complete the administrative review process in accordance with the applicable procedural rules – rules that are defined not by the PLRA, but by the prison grievance process itself." *Id.* at 218, 127 S.Ct. 910 (internal citation and quotation marks omitted).

The Supreme Court has refused to read a futility exception into the statutory exhaustion requirement. *Booth v. Churner*, 532 U.S. 731, 741, n. 6 (2001). Inmates are excused from the

-8-

exhaustion requirement only if the prison system completely refuses to review the inmate's allegations. See *Wyatt v. Leonard*, 193 F.3d 876, 879 (6th Cir. 1999). "[E]xhaustion is required even if the prisoner subjectively believes the remedy is not available; even when the state cannot grant the particular relief requested, and even where [the prisoners] believe the procedure to be ineffectual or futile." *Napier v. Laurel County*, 636 F.3d 218, 222 (6th Cir. 2011) (internal citations and quotations omitted). Likewise, inmates who allege they were unable to exhaust all administrative remedies are still bound by §1997e(a) and required to attempt to comply with facility policy. See, e.g., *Jones v. Smith*, 266 F.3d 399, 400 (6th Cir. 2001) (dismissal appropriate for failure to exhaust even where counselor would not provide inmate with a form because the inmate did not claim that there was no other source of obtaining the form or that he made any subsequent attempts to resolve the issue).

According to the affidavit of Sean Daugherty, NEOCC Executive Assistant and the Facility Grievance Officer, the BOP inmate grievance procedure at NEOCC is contained in CCA Policy 14-5. See Affidavit of Sean Daugherty, ECF Dkt. # 9-1 at ¶5. During intake, each inmate is provided with an Inmate Information Handbook, which contains an explanation of the facility's grievance policy and procedures. Id. at ¶6. Each inmate is required to complete a written acknowledgment indicating that he or she received the handbook. *Id.* at ¶7. Additionally, an explanation of the grievance policies and procedures is provided to each inmate during the facility Admission and Orientation Program. Id. at ¶ 8. Further, inmates have access to the complete grievance policy and other grievance materials through their unit counselors and in the NEOCC law library. *Id.* at ¶9. The grievance policy and procedures are available in both English and Spanish. *Id.* at ¶6.

At NEOCC, the grievance resolution policy for BOP inmates consists of five steps:

1. Inmates must initially submit the Informal Resolution Form (Form 14-5A) to a member of the unit management team (or health services staff for medical issues) within seven days of the alleged incident. The time for filing begins from the date the problem or incident became known to the inmate or resident.

2. If the inmate is dissatisfied with the outcome of the informal resolution, he may submit a formal grievance. Inmates must initially send grievances on the CCA Inmate/Resident Grievance Form (Form 14-5B) and attach the Informal Resolution Form to the Grievance Officer within five days of receipt of a response to their Informal Resolution request.

> 3. If the inmate is dissatisfied with the response to the formal grievance, he may appeal to the Warden within five days of receipt of the formal grievance response by completing the Request for Warden/Administrator Review portion of the Grievance Form.
>
> 4. If the inmate is dissatisfied with the Warden's response, he may appeal to the BOP Administrator of the Privatization Management Branch within thirty days of receipt of the Warden's response.
>
> 5. If the inmate is dissatisfied with the response of the Privatization Management Branch, he may appeal to the BOP National Inmate Appeals Administrator within thirty days of receipt of the Privatization Management Branch's decision.

Id. at ¶10.

The policy requires that grievances and informal resolutions must be submitted in writing on the appropriate form. *Id.* at ¶13. If an inmate chooses not to submit the grievance through the locked grievance mail boxes located in each unit, the inmate becomes responsible for ensuring that all submissions are received in a timely manner. *Id.* at ¶14. Telephone calls are not recognized as grievances under the grievance policy. Id. at ¶13. Similarly, inmate requests to staff, e-mails, letters, and facsimiles sent to NEOCC, any employee not stated in the grievance policy, or the Facility Support Center are not recognized as grievances under the grievance policy. *Id.* The policy provides a means by which urgent concerns will be addressed in an expedited manner. *Id.* at ¶12. If an inmate fails to properly submit a grievance, the grievance is rejected. *Id.* at ¶15.

Likewise, if the Facility Grievance Officer determines that there is no merit to the grievance, it may be denied and the requested relief rejected. *Id.* If an inmate fails to cooperate with the investigation process or fails to comply with the deadlines required therein, he has failed to carry the grievance through to its finish and has thus failed to exhaust the available administrative remedies. *Id*. at ¶16.

According to the Daugherty affidavit, Plaintiff did not submit a formal grievance for calendar year 2012. *Id*. at ¶17. Daugherty explains that the inmate/resident grievance attached to Plaintiff's complaint was rejected because it was untimely, that is, it was received more than five days after Plaintiff received Nurse Starr's response denying his informal resolution. *Id*. at ¶20. Furthermore, Daughtery avers that Plaintiff's alleged appeal of his grievance to the Warden is not valid, because there is no signature from the Warden, and no facility record or log indicating an appeal was filed

-10-

to the Warden. *Id*. Finally, although Daugherty conceded that Plaintiff filed subsequent appeals to the BOP Administrator or the Privatization Management Branch and the BOP National Inmate Appeals Administrator, he asserts that Plaintiff's subsequent BOP appeals do not excuse his failure to timely complete steps two and three of the grievance process. *Id*. at ¶21.

Daugherty attests that Plaintiff failed to properly exhaust his administrative remedies in accordance with the time lines and other requirements of the NEOCC Grievance Policy with respect to his claims against the CCA defendants. Id. at ¶22. Therefore, the undersigned recommends that the Court find that Plaintiff has not complied with "the applicable procedural rules" as defined by NEOCC's Grievance Policy. See *Jones v. Bock*, 549 U.S. at 218-19; see also *Vandiver v. Correctional Med. Servs.*, Inc., 326 F. App'x 885, 889 (6th Cir.2009)("[P]roper exhaustion still requires compliance with the grievance policy's critical procedures such as timeliness.") Because Plaintiff has failed to properly exhaust his available administrative remedies under the NEOCC Grievance Policy before filing suit, the undersigned recommends that the Court dismiss this action pursuant to the PLRA.

Furthermore, because Plaintiff cannot remedy his failure to comply with the NEOCC policies and procedures which govern the proper exhaustion of his administrative remedies, it would be futile for Plaintiff to refile his complaint. In such a case, dismissal with prejudice is warranted. See, e.g., *Shane v. Fauver*, 213 F.3d 113, 117 (3d Cir. 2000); *Aguirre v. Corrections Corp. of Am.*, No. 4:08-cv-2365, 2009 WL 2423702, at *2 (N.D. Ohio Aug. 3, 2009); *Benavidez v. Stansberry*, No. 4:07-cv-3334, 2008 WL 4279559, at *12 (N.D. Ohio Sept. 12, 2008). Accordingly, the undersigned recommends that Plaintiff's Eighth Amendment claim be dismissed with prejudice.

Finally, the undersigned recommends that Plaintiff's Eighth Amendment claim against the BOP Director should be dismissed *sua sponte* based upon Plaintiff's failure to exhaust his administrative remedies. A court dismissing a plaintiff's claims against moving defendants may *sua sponte* dismiss non-moving defendants as well where "it is clear that the same ruling would inevitably apply to each of the defendants." *Boykin v. Mortgage Electronic Registration Systems, Inc.*, 2012 WL 3029862, *6 (E.D.Mich.) quoting *Rose v. Arkansas Valley Envtl. & Utility Auth.*, 562 F.Supp. 1180, 1189 n. 11 (W.D.Mo.1983).

-11-

## IV. RECOMMENDATION OF DISMISSAL

In summary, the undersigned recommends that the Court grant the CCA defendants' motion to dismiss to the extent it seeks dismissal of a *Bivens* claim for damages, but deny the motion to dismiss to the extent it is predicated upon Plaintiff's failure to state a claim upon which relief can be granted. Dkt. #8. Furthermore, the undersigned recommends that the Court grant the CCA defendants' motion for summary judgment and dismiss Plaintiff's Eighth Amendment claim with prejudice based upon Plaintiff's failure to exhaust his administrative remedies. Dkt. #9. Finally, the undersigned recommends that the Court dismiss the Eighth Amendment claim against the BOP Director *sua sponte* and with prejudice based upon Plaintiff's failure to exhaust his administrative remedies. As a consequence, the undersigned recommends that this matter be dismissed with prejudice in its entirety.

IT IS SO ORDERED.

DATE: April 30, 2013

                                 */s/George J. Limbert*
                                 GEORGE J. LIMBERT
                                 UNITED STATES MAGISTRATE JUDGE

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice. Fed. R. Civ. P. 72; L.R. 72.3. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).